Mrs. Madeliene Twinam **THOMAS**

v.

**J. R. CHAMBERLAIN,** Raymond Patterson, John Cuneo, F. R. Kollmansperger, John Crabtree, S. C. Klaus, Mrs. H. P. Dunlap, W. D. Frazier, Roy Smith, Walter Robinson, W. D. Moon, Selmon T. Franklin, Rev. J. C. Bonner, Mrs. Ruth Farris, Earl Williams and J. Marvin Smith.

**Civ. No. 2240.**

United States District Court
E. D. Tennessee, S. D.

Aug. 5, 1955.

Frank M. Gleason, Rossville, Ga.,
Roberts & Weill, Chattanooga, Tenn., for
plaintiff.

E. K. Meacham, J. W. Anderson, Chattanooga, Tenn., for defendants.

DARR, Chief Judge.

According to the complaint, this action is for damages instituted under authority of the law as announced at 28 U.S.C.A. § 1343 and 42 U.S.C.A. § 1981 et seq. However, the jurisdictional grounds are found in the Judicial Code as cited, but the basic rights sought are codified at sections 1983 and 1985(3) of Title 42 U.S.C.A. Thus the suit is under a portion of the Civil Rights Acts.

Specifically the suit is against the members of the Chattanooga Housing Commission and the Building Inspector of that City as individuals under the provisions of section 1983 of Title 42, which authorizes such a recovery against any person " * * * who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws * * *." It is alleged in the complaint that the wrongful action was jointly and severally and, therefore, a conspiracy is charged, which would fall under Title 42 U.S.C.A. § 1985(3). But it is immaterial for a decision on the motion to determine whether the conduct was individual or in concert.

The case is presently before the Court upon defendants' motion for summary judgment. In addition to the pleadings and exhibits, affidavits have been filed by defendants, J. R. Chamberlain, Chairman of the Commission, and J. Marvin Smith, Building Inspector, in support of the motion. The plaintiff has filed an opposing affidavit, together with certain correspondence sent to her rental agent by the defendant Inspector.

On April 21, 1953, the Board of Commissioners for the City of Chattanooga passed Ordinance No. 4104, which set up certain minimum standards to be met by housing units located within the city as to safety, sanitation, health, and fire hazard. The Ordinance established a Housing Commission which was to act upon cases arising thereunder. It was made the duty of the City Building Inspector to inspect housing units and make an initial determination whether or not they came up to the required standards. If a particular unit did not he was to give written notification of that fact to the owner, among others, with a statement of the particulars in which the unit was substandard. The notice was to include an order that the unit be vacated, repaired or demolished within a designated time. The Inspector was also authorized to post a notice upon the unit itself which should state that it had been found unfit for habitation and was to remain posted until the dwelling had been repaired, vacated, or demolished, in accordance with notice given the owner.

If the owner failed to comply within the time provided the Inspector was required to notify the owner to appear before the Commission on a specified date to show cause why the unit should not be repaired, vacated, or demolished in accordance with the deficiencies contained in the Inspector's notification. At the hearing the Commission was required to hear and consider evidence offered by the Inspector and by the owner and prepare written findings of fact as to whether the Ordinance was in fact violated. If so, the Commission was authorized to issue a final order commanding the owner to repair, vacate, or demolish within a certain time. Upon his failure to do so the Commission was given the right to accomplish the vacation, repair, or demolition of the dwelling as the facts warranted under the standards provided in the Ordinance. However, the owner might appeal any such final order to the City Board of Commissioners within 10 days after its issuance and, if he did so, he was given the right to a hearing de novo before that body.

Generally stated the complaint alleges ownership in the plaintiff of a particular dwelling within the City; that on March

8, 1954, the Inspector placed a condemnation sign upon it and ordered plaintiff's rental agent to cease collecting rents, all without notice and without affording plaintiff a hearing. That as a result plaintiff was deprived of her property without due process of law and was denied equal protection of the law. Further that such acts were not in accordance with the provisions of the Ordinance and that in so doing the defendants were acting under color of law, thereby entitling plaintiff to recover money damages from them individually under the provisions of said section 1983 or 1985(3) of Title 42 U.S.C.A. It is also alleged parenthetically that the Ordinance itself is unconstitutional.

The Inspector has filed a separate answer. The remaining defendants have answered jointly. In substance the answers assert the validity of the Ordinance and good faith compliance with its terms, including a preliminary examination of the property by the Inspector and determination of its substandard condition, notification to the plaintiff, her failure to comply with the notice, and hearings before the Commission at which the plaintiff was represented and as a result of which she agreed through counsel to make the necessary repairs. It is also denied that the Commission ever took possession of the premises or issued any final order concerning it.

■ The pleadings, considered alone, raise disputed issues of fact. There are some cases which hold that facts set forth in the pleadings cannot be controverted by affidavits and documentary evidence so as to warrant the granting of summary judgment, even though they clearly show that there is in reality no genuine issue as to any material fact. But, as this Court has pointed out on numerous occasions, reason and the great weight of authority are to the contrary. Sufficient to cite, Moore's Federal Practice, 2nd Ed., volume 6, sections 56.04(1), 56.11(3), 56.15(2), and the numerous cases so holding there discussed.

■ The authority for the Ordinance came from a grant to municipalities by the State of Tennessee, through exercise of police powers, to adopt ordinances requiring repair or demolition of dwellings which are unfit for occupancy due to dilapidation, defects increasing the fire hazard, lack of sanitary conditions, or which are for other such reasons detrimental to the health, safety or morals of the public. Williams' Tennessee Code, section 3647.42 et seq. Further, that the abatement of such dwellings as constituting nuisances has been held to be a valid exercise of the police power. Theilan v. Porter, 82 Tenn. 622; Jackson v. Bell, 143 Tenn. 452, 226 S.W. 207.

■ The plaintiff's right to recover is not affected by the validity or invalidity of the Ordinance. Sections 1983 and 1985(3) of Title 42 U.S.C.A., under which the plaintiff sues, predicate liability upon deprivation of federal rights by virtue of acts under color of law, not upon the validity or invalidity of the law under color of which the defendants acted; and because no presumption of improper motive may be ascribed to ministerial official acts solely by reason of the unconstitutionality of the statute under which they were taken. Thus it has been expressly held by the Tennessee courts that an official, whose duty it is to carry out the provisions of an act, is authorized to treat it as prima facie valid and is not liable for any acts committed thereunder by reason of its unconstitutionality. Bricker v. Sims, 195 Tenn. 361, 259 S.W.2d 661, citing Roberts v. Roane County, 160 Tenn. 109, 23 S.W.2d 239 and Beaver v. Hall, 142 Tenn. 416, 217 S.W. 649. This rule is for retrospective action of ministerial officials, as in this case. Prospective conduct of such officials would be different.

■ Therefore, in deciding the present motion, the Court must determine only whether there exists a genuine issue as to any material fact, the material facts being such as would legitimately tend to show that the defendants acted under color of law, thereby subjecting

the plaintiff to deprivation of her federal rights.

After careful consideration of all of the record, the Court finds that no such issue exists, that the undisputed facts show a substantial compliance with the Ordinance and that there has been no violation of any of plaintiff's federal rights.

It was the Inspector's duty to examine housing units suspected of being substandard and to make an initial determination of that fact. The plaintiff admits this was done. She merely contends the exact date of the inspection is uncertain; that the determination made was unjustified; and that she did not receive notice in accord with the provisions of the Ordinance. The Ordinance did require the Inspector to give the owner written notice of his findings, including a recital of the particulars in which the unit was substandard with an order that it be repaired, vacated, or demolished within a certain time. Although plaintiff denies receipt of such notice she did in fact receive notice that the Inspector had taken such action for she admits in her affidavit that she received his letter of February 8, 1954, a copy of which is attached as an exhibit to his answer. The letter called plaintiff's attention to the fact that the dwelling had been condemned on June 20, 1953, for her failure to have it repaired, and notified her to be present at the meeting of the Commission on February 17, 1954, to show cause for her failure to do so.

That she had actual notice of the proceedings is further substantiated by Exhibit No. 5 to the Commissioners' answer, which are certified extracts of the minutes of the Commission meeting for that date. They reveal the Inspector reported having been advised by the plaintiff's rental agent, Light Realty Company, that the plaintiff did not intend to have the property repaired and that the Commission postponed action for an additional two weeks and instructed the Inspector to notify the plaintiff's attorney to be present at that time. Exhibit No. 3 to the Inspector's answer is a copy of a letter dated February 23, 1954, written by him to the plaintiff in which she was notified of the postponement and advised to be present at the meeting of March 3, 1954. Plaintiff's affidavit does not deny that such notice was given. The minutes of the March 3rd meeting, also made an exhibit to the answer of the Commission members, reveal that a report was made by the Commission Chairman that plaintiff's attorney had advised him that the plaintiff had agreed to bring her property up to housing standards. Although the plaintiff has challenged the accuracy of the minutes of another meeting held on October 21, 1953, at which the Commission considered other property belonging to the plaintiff not here involved, the accuracy of the minutes of March 3rd is not questioned. Neither has her attorney filed an affidavit denying they constitute a correct statement of what transpired.

The plaintiff not only had actual notice of the proceedings before any action was taken by the Commission, but the hearing originally set was delayed for an additional two weeks when the plaintiff did not appear at the February 17, 1954 meeting, at which she had been notified to be present. Under the circumstances, if the plaintiff failed to receive the preliminary Inspector's notice she was certainly not prejudiced. Much less does that fact amount to a violation of her federal rights or tend to show the defendants acted under color of law.

In addition to the matters already discussed, the plaintiff's affidavit contains certain other statements in opposition to the motion. It is asserted the defendants failed to act under the Ordinance and that their action was unjustified. Considered alone such statements are insufficient to raise issues as to such facts since they amount to nothing more than mere statements of conclusions. However, additional statements are asserted in an attempt to support these conclusory allegations. Thus plaintiff claims she received no prior notice that a con-

demnation notice was being placed on her property, that the notice placed thereon differed in some respects from the wording required by the Ordinance and that the members of the Commission took an active part in the placing of the notice.

As to these matters, the Ordinance does not require an owner be notified that such notice was to be placed on his property. The only notice required was the notice of the Building Inspector's findings and order, and of any hearing thereon before the Commission. The latter was given and, as pointed out, failure to give the former resulted in no injury to the plaintiff. Neither has the plaintiff shown she was misled or prejudiced in any way by the variance in specific wording of the notice from that required by the Ordinance, and the Court can see no reason for a different result because a member of the Commission may have assisted the Inspector in placing it upon the premises. Clearly it was placed there because the Ordinance required it. At least the record contains nothing from which the existence of any other or improper motive might be presumed. The fact that the plaintiff was represented by counsel before the Commission at several hearings and appeared at least once in person and made no complaint about proper notice concerning the property in question amounts to a waiver of the regularity of former proceedings.

Nor does plaintiff's charge that the Building Inspector ordered her rental agency to cease collecting rents raise any issue of action under color of law or deprivation of federal rights in view of section 1–A of the Ordinance which makes it unlawful for any owner or party in interest of a dwelling to knowingly rent a dwelling which is unfit for human habitation. As to plaintiff's claim that the condemnation of her property was unjustified because the minutes of the Commission show it was inspected from a fire hazard standpoint and not from a health standpoint, it is noted: First, a reading of the minutes referred to discloses the premises were inspected from a health as well as fire hazard standpoint; second, the Ordinance authorizes condemnation upon the basis of either; third, the Commission did not issue a final order concerning the property.

There could be no federal question arising because of the asserted errors in the minutes of the October 21 meeting of the Commission and the variance of dates contained in some of defendant's documentary evidence as to whether the Inspector's examination of the premises occurred on July 20 or June 20, 1953.

In addition it is probably true that the plaintiff would be required to exhaust her administrative remedies before she could say that the state officials had deprived her of a federal right. Her administrative remedies were simple and adequate. She did not await the decision of the Commission and, if it had been adverse, she could have appealed to the City Board of Commissioners for a hearing de novo.

 The federal courts are properly reluctant to interfere with the administrative acts of local officers for, under most circumstances, the conduct of such officials is to be regulated by state procedure. The federal courts should not be called upon to determine whether state officials have properly exercised police authority until the exhaustion of administrative remedies. How can a United States Court determine whether the federal rights of a citizen of the United States have been invaded by a state until all the administrative remedies offered by the state have been exercised? Decisions by administrative bodies are not res judicata and would in no wise affect the right of a United States citizen to institute a suit under the Civil Rights Acts.

From a consideration of the entire record, the Court concludes that there is no credible evidence showing disputed factual questions and the defendants should not be compelled to bear the useless burden of submitting the undisputed issues to a trial on the merits.

The motion of the defendants is sustained.

There will be an order in accord herewith.

This opinion will serve as the findings of fact and conclusions of law.